IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ISAAC JUSTINIANO, | ) | |
| Petitioner, | ) | Civil Action No. 13-343 Erie |
| | ) | |
| v. | ) | District Judge Nora Barry Fischer |
| | ) | Magistrate Judge Susan Paradise Baxter |
| BOBBY L. MEEKS, | ) | |
| Respondent. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**

It is respectfully recommended that the petition for a writ of habeas corpus filed by Petitioner, Isaac Justiniano, be denied.

**II.    REPORT**

Petitioner is a federal inmate who is incarcerated at the Federal Correctional Institution, McKean. He contends that the Bureau of Prisons (the "Bureau" or the "BOP"), which is the agency responsible for implementing and applying federal law concerning the computation of federal sentences, see, e.g., United States v. Wilson, 503 U.S. 329, 331 (1992), has erred in computing his federal sentence.

**A.    Relevant Statutes and Policies**

Two statutes are relevant to this case. The first is 18 U.S.C. § 3585(a), which governs the date upon which a federal sentence commences. The second is 18 U.S.C. § 3585(b), which governs the amount of sentencing credit that an inmate may receive for time served in official detention prior to the commencement of his federal sentence. The BOP's policies regarding sentence computation are set forth in Program Statement 5880.28, Sentence Computation Manual ("PS 5880.28"). Also relevant to this case is Program Statement 5160.05, Designation of State Institution for Service of Federal Sentence

1

("PS 5160.05"). BOP Program Statements are internal agency guidelines, and in many cases the policies set forth therein are "akin to an interpretive rule." Reno v. Koray, 515 U.S. 50, 61 (1995). The BOP policies at issue in this case are not published in any federal regulation, and thus are not subject to public notice and comment before adoption. Therefore, they are not entitled to the deference described in Chevron U.S.A. v. National Resources Defense Council, 467 U.S. 837 (1984). They are, however, entitled to "some deference" from this Court so long as they set forth "a permissible construction of" the statutes at issue. Blood v. Bledsoe, 648 F.3d 203, 207-08 (3d Cir. 2011) (citing Reno, 515 U.S. at 61), cert. denied, 132 S.Ct. 1068 (2012).

### 1. Calculation of the date upon which a federal sentence commences

18 U.S.C. § 3585(a) governs the date a federal sentence commences. It provides:

> (a) Commencement of sentence. – A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

18 U.S.C. § 3585(a).

The BOP, and not the federal sentencing court, determines the date upon which a federal sentence commences. See, e.g., Ruggiano v. Reish, 307 F.3d 121, 126 (3d Cir. 2002), superseded on other grounds by U.S.S.G. § 5G1.3(c) app. note 3(E) (2003). Because the statute provides that a sentence commences when an inmate is produced or received for service of his federal sentence, the BOP will not commence a sentence earlier than the date it is imposed, even if made concurrent with a sentence already being served. PS 5880.28, Chapt. 1, Page 13 ("In no case can a federal sentence of imprisonment commence earlier than the date on which it is imposed."). See, e.g., Rashid v. Quintana, 372 F.App'x 260, 262 (3d Cir. 2010) ("a federal sentence cannot begin to run earlier than on the date on which it is imposed.") (citing Unites States v. Labeille-Soto, 163 F.3d 93, 98 (2d Cir. 1998), which

stated: "We see nothing in [§ 3585(a)] to indicate that the court is permitted to order that the sentence be deemed to have commenced on an earlier date. Indeed, the determination of the precise date on which a sentence begins appears to have been intended to be a ministerial decision that depends on the timing of the defendant's arrival at the appropriate place with respect to the sentence that is to be served, and we have held that after a defendant is sentenced, it falls to the BOP, not the district judge, to determine when a sentence is deemed to commence[.]" (internal quotations and brackets omitted)).

When an inmate is only facing service of a federal sentence, the application of § 3585(a) is straightforward. The BOP will designate the inmate to a federal detention facility and it will calculate the federal sentence to have commenced on the date it was imposed. PS 5880.28, Chapt. 1, Page 12. Oftentimes, however, as in the instant case, an inmate is subject to multiple sentences, *e.g.*, at the time his federal sentence is imposed he is or will soon be subject to a state sentence. In that case, the federal and state governments must resolve where and/or in what order the inmate will serve his multiple sentences. At common law the "primary custody" doctrine developed to assist the sovereigns in making these determinations and to provide an orderly method by which to prosecute and incarcerate an individual that violated the law of more than one sovereign. Ponzi v. Fessenden, 258 U.S. 254 (1922). See, e.g., Bowman v. Wilson, 672 F.2d 1145, 1153-54 (3d Cir. 1982); George v. Longley, 463 F.App'x 136, 138 n.4 (3d Cir. 2012). In relevant part, the doctrine provides that the sovereign that first arrests an individual has primary custody over him. That sovereign's claim over the individual has priority over all other sovereigns that subsequently arrest him. The sovereign with primary custody is entitled to have the individual serve a sentence it imposes before he serves a sentence imposed by any other jurisdiction, regardless of the chronological order of sentence imposition. See, e.g., Bowman, 672 F.2d at 1153-54. Primary custody remains vested in the sovereign that first arrests the individual until its sentence expires

3

and it releases the inmate, or until it relinquishes its priority through some other act, such as granting bail, dismissing the charges, or releasing the individual on parole. George, 463 F.App'x at 138 n.4.

The BOP has incorporated the common law primary custody doctrine into its policies. Thus, if the federal government has primary custody of an inmate on the date his federal sentence is imposed, it is entitled to have that inmate serve his federal sentence upon imposition. In such a case, the BOP will designate the inmate to a federal detention facility for service of the federal sentence and will calculate that sentence to have commenced on the date the federal sentencing court imposed it, even if at that same time the inmate is serving a concurrent state sentence. PS 5880.28, Chapt. 1, Pages 12-13. If an inmate is in the primary custody of the state when his federal sentence is imposed and if his federal sentence is *consecutive to* any state sentence, the inmate will be returned to the state after federal sentencing. The BOP will commence the inmate's federal sentence under § 3585(a) when the state relinquishes its priority and releases him to federal custody. PS 5880.28, Chapt. 1, Pages 12-13, 31-33; see also PS 5160.05, Pages 2-12.

If, however, the inmate is in the primary custody of the state and the federal sentencing court orders that he serve his federal sentence *concurrently* with any state sentence, the BOP will return physical custody of the inmate to the state, designate the state facility as the initial place of service of the federal sentence pursuant to its authority under 18 U.S.C. § 3621(b), and calculate his federal sentence to have commenced on the date the federal court imposed it. PS 5880.28, Chapt. 1, Page 13, 32A-33; PS 5160.05, Pages 2-12. This is what occurred in Petitioner's case.

### 2. Calculation of pre-commencement credit

Section 3585(b) governs pre-commencement credit (commonly known as prior custody credit). It controls whether an inmate is entitled to any credit against his federal sentence for time he served in official detention prior to the date his federal sentence commenced. It provides:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences –
>
> (1)    as a result of the offense for which the sentence was imposed; or
>
> (2)    as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> **That has not been credited against another sentence.**

(Emphasis added).

The intent of the last clause of § 3585(b) is to prohibit double sentencing credit situations. Wilson, 503 U.S. at 337 (explaining that with the enactment of § 3585(b), "Congress made it clear that a defendant could not receive a double credit for his detention time."). Thus, the BOP may not grant pre-commencement credit under § 3585(b) for any time that has been credited against another sentence. See, e.g., Rios v. Wiley, 201 F.3d 257, 272 (3d Cir. 2001), *abrogated in part on other grounds by statute*; United States v. Vega, 493 F.3d 310, 314 (3d Cir. 2007).

### B. Relevant Factual Background

The underlying facts of this case are not in dispute. On March 6, 2001, Petitioner was sentenced in Monroe County, New York, to a three to nine year state term of confinement for Criminal Sale of a Controlled Substance, and Criminal Possession of a Controlled Substance. In October of 2001, Petitioner was released from New York state custody via parole.

5

On November 20, 2006, Petitioner was taken into the custody of New York state authorities for violation of state parole supervision. The circumstances of this arrest resulted in his federal offenses. An indictment was filed against Petitioner in the U.S. District Court for the Western District of New York (hereinafter "the District Court") at Docket Number 6:07-cr-6024 and a warrant for his arrest was executed. Because state/local authorities had arrested Petitioner first, the State of New York and the federal government considered him to be in the primary custody of the State of New York. Accordingly, on several occasions a U.S. Magistrate Judge issued a writ of habeas corpus ad prosequendum upon the Monroe County Jail in Rochester, New York (where Petitioner was incarcerated for his state offenses) so that Petitioner could appear before the District Court to answer his federal charges. A prisoner detained pursuant to a writ of habeas corpus ad prosequendum remains in the primary custody of the sending sovereign unless and until it relinquishes jurisdiction over him. See, e.g., Ruggiano, 307 F.3d at 125 n.1. The receiving sovereign (in this case, the federal government) is considered simply to be "borrowing" the prisoner from the sending sovereign (in this case, the State of New York) for the purposes of indicting, arraigning, trying, and sentencing him. Id.

On February 24, 2009, Petitioner was sentenced in the District Court to an aggregate 101-month term of imprisonment for Possession with Intent to Distribute Heroin, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C); Possession of a Firearm in Furtherance of a Drug Trafficking Crime, 18 U.S.C. § 921(c)(1); and, Felon in Possession of a Firearm, 18 U.S.C. §§ 922(g)(1), 924(a)(2). It also ordered that the "[s]entence [is] to be served concurrently to the New York State sentence the defendant is now serving." [Resp's Attach. 1, ECF No. 7-2 at 3].

On February 26, 2009, two days after his federal sentence was imposed, the U.S. Marshals Service returned Petitioner to state authorities in satisfaction of the federal writ of habeas corpus ad prosequendum. More than 19 months later, on September 29, 2010, the State of New York paroled

Petitioner and he was released to the U.S. Marshals Service to continue service of his federal sentence in a federal correctional facility. The time Petitioner spent in the primary custody of New York state authorities from November 20, 2006, through February 27, 2007, and from October 5, 2007, through September 29, 2010, was credited against his state sentence.

The BOP computed Petitioner's federal sentence to have commenced under 18 U.S.C. § 3585(a) on February 24, 2009, which is the date the District Court imposed the sentence. Because New York credited the time periods of November 20, 2006, through February 27, 2007, and October 5, 2007 through February 23, 2009 (the day before his federal sentence commenced under § 3585(a)), to Petitioner's state sentence, the BOP determined those time periods were not creditable toward his federal sentence under § 3585(b). Petitioner did receive 219 days of credit under § 3585(b) for the time period he spent in official detention from February 28, 2007, through October 4, 2007, because that time was not credited towards his New York sentence. Petitioner's projected release date is currently set at November 17, 2015.

In this habeas corpus action, Petitioner challenges the BOP's sentence calculation and contends that he is entitled to credit against his federal sentence for all of the time he served on his state sentence. He raised this same challenge through the BOP's administrative remedy process. In a response dated August 3, 2011, Harrell Watts, the BOP's Administrator, National Inmate Appeals, explained to Petitioner why he was not entitled to additional sentencing credit:

> [Y]ou claim your state and federal sentences are concurrent and, therefore, you should receive credit for all time spent in custody from the date of your arrest on November 20, 2006….
> …. A review of your record revealed that on October 23, 2001, you were paroled from the New York Department of Corrections from a 3 to 9 year sentence for Criminal Sale and Possession of a Controlled Substance imposed in Monroe County, New York, Case No. 2000-0529. On November 20, 2006, your New York State parole was revoked, and you were returned to the New York Department of Corrections to serve the remainder of the 9-year original sentence imposed in Monroe County, New York.

7

On March 1, 2007, you were temporarily released to the United States Marshals Service pursuant to a federal writ. On February 24, 2009, you were sentenced in the United States District Court, Western District of New York, to a total term of 101 months imprisonment for Possession with Intent to Distribute Heroin, Felon in Possession of a Firearm, and Possession of a Firearm in Furtherance of a Drug Trafficking Crime. This sentence was ordered to run concurrently to the New York state sentence you were serving.

Based on the primary jurisdiction of state officials, you were returned to the New York Department of Corrections after proceedings. You were subsequently released from the New York Department of Corrections to the federal detainer on September 29, 2010.

A sentence computation was completed commencing the federal sentence on the date it was imposed, February 24, 2009, thereby effecting concurrent service of your state and federal terms as specified in the federal Judgment in a Criminal Case. At the time your federal sentence was imposed, you were in service of an undischarged term of imprisonment in the State of New York and in federal custody pursuant to a writ.

Title 18, U.S.C. § 3585(b) precludes the application of prior custody credit for the time you are requesting, as this time was applied toward the service of your sentence for violation of state parole.
- - -
We find your sentence has been computed as directed by federal statute and Bureau of Prisons Program Statement 5880.28, <u>Sentence Computation Manual (CCCA of 1984)</u>.

[ECF No. 1-1 at 4].[1]

---

[1] The BOP has created a limited exception to § 3585(b)'s rule against double credit called <u>Willis</u> qualified nonfederal presentence credit (named after the decision in <u>Willis v. United States</u>, 438 F.2d 923 (5th Cir. 1971)). Watts explained to Petitioner why he was not entitled to any <u>Willis</u> qualified nonfederal presentence credit:

> When state and federal sentences are running concurrently, some prior custody credits may be applied in accordance with case law, <u>Willis v. U.S.</u>, 438 F.2d 923 (5th Cir. 1971). In a "Willis" situation, when state and federal sentences are concurrent, and the state raw full term date is absorbed by the federal full term date, resulting in no benefit for credits applied to the state sentence, prior custody credit is then given for all qualified state presentence time from the date of the federal offense until the day before the first sentence beings to run, federal or non-federal.
>
> Upon review of your appeal, it was determined that you did not qualify for prior custody credit under "Willis" between November 20, 2006, and February 23, 2009, as this time is not considered "qualified state pre-sentence time," but time spent in service of your original New York State sentence as a parole violator.

[ECF No. 1-1 at 4]. Petitioner does not argue in this case that he is entitled to <u>Willis</u> qualified nonfederal presentence credit. If he had, the argument would be rejected. Petitioner has provided this Court with no reason to decline to defer to the BOP's application to him of its policies regarding <u>Willis</u> qualified nonfederal presentence credit.

8

Respondent has filed his Answer [ECF No. 7], in which he contends that the Petition should be denied. Petitioner has also filed what he has entitled a Petition for a Writ of Mandamus [ECF No. 6] and a Motion to Release [ECF No. 8]. Both of these documents are repetitive of the Petition and neither is appropriate or necessary in this habeas action and they will be dismissed by separate order of this Court. Nevertheless, this Court has considered the arguments that Petitioner has made in those two documents as additional support for his contention that he is entitled to habeas relief.

### C. Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute[.]" Cardona v. Bledsoe, 681 F.3d 533, 535 (3d Cir. 2012) (quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)). 28 U.S.C. § 2241 "confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence," McGee v. Martinez, 627 F.3d 933, 935 (3d Cir. 2010), such as, for example, the way in which the BOP is computing his sentence. See, e.g., Barden v. Keohane, 921 F.2d 476, 478-79 (3d Cir. 1990). Such petitions are filed in the federal court of the judicial district where the federal prisoner is incarcerated. Thus, this Court has jurisdiction under § 2241 to consider Petitioner's claim that the BOP has erred in computing his sentence.

### D. Discussion

#### 1. Petitioner's federal sentence commenced on February 24, 2009, in accordance with § 3585(a) and BOP policies

The record before this Court establishes that on the date the District Court imposed Petitioner's sentence (February 24, 2009): (1) he was in primary state custody and "on loan" to federal authorities pursuant to a writ of habeas corpus ad prosequendum; and, (2) while on loan to federal authorities he

9

was serving his state parole violator term. Because the District Court directed that Petitioner's federal sentence be served concurrent with his state sentence, the BOP, in accordance with its policies and procedures, designated the state facility where Petitioner was serving his state sentence as the official detention facility at which he commenced service of his federal sentence so that it could compute his federal sentence to have commenced on February 24, 2009 – the date the District Court imposed it. PS 5880.28, Chapt. 1, Page 13, 32A-33; PS 5160.05, Pages 2-12. The BOP thus commenced Petitioner's sentence on the earliest date that it could commence. See PS 5880.28, Chapt. 1, Pages 12-13. See also Rashid, 372 F.App'x at 262 ("a federal sentence cannot begin to run earlier than on the date on which it is imposed.") (citing Labeille-Soto, 163 F.3d at 98).

### 2. Petitioner is not entitled to any sentencing credit under § 3585(b)

The BOP has determined that Petitioner is entitled to 219 days of pre-commencement credit under § 3585(b) for the time period of February 28, 2007, to October 4, 2007, because that time was not credited to his state sentence. The State of New York confirmed that Petitioner received credit for November 20, 2006, through February 27, 2007, and October 5, 2007, through February 23, 2009 (the day before his federal sentence commenced under § 3585(a)). Therefore, he cannot receive credit under § 3585(b) for the time he spent in official detention during those dates. See, e.g., Rios, 201 F.3d at 272; Vega, 493 F.3d at 314.

### 3. Ruggiano v. Reish does not support Petitioner's request for habeas relief

To support his argument that the BOP erred in computing his sentence, Petitioner relies on Ruggiano v. Reish, 307 F.3d 121 (3d Cir. 2002). The holding in that case is not applicable to this case. When Anthony Ruggiano was sentenced, a federal district court had the authority under the § 5G1.3 of the Sentencing Guidelines to adjust a defendant's term of imprisonment for time already served on a

concurrent state sentence. When a sentencing court exercised that authority, it imposed what was sometimes referred to as a "retroactively concurrent" sentence. Ruggiano, 307 F.3d at 128-30; see also Allan v. Johns, 205 F.App'x 934 (3d Cir. 2006). That term did not mean that the sentencing court directed that the defendant's federal sentence commence on the date the previously-imposed state sentence commenced. As set forth above, a sentence cannot commence prior to the date that it is imposed and it is the BOP, and not the federal sentencing court, that determines the date upon which a federal sentence commences. See e.g., id. at 126; LaBeille-Soto, 163 F.3d at 98. When a federal sentencing court imposed a "retroactively concurrent" sentence, the court awarded a sentence reduction under the Sentencing Guidelines designed to account for time already served on the concurrent state sentence. Id.

Ruggiano pleaded guilty in federal court to charges of racketeering. Id. at 123. At that time, he was serving a two to four year sentence on an unrelated state conviction for gambling, and he had already served 14 months on that state sentence. Id. In announcing Ruggiano's term of imprisonment on his federal racketeering offenses, the federal sentencing court stated that Ruggiano is "to be imprisoned for a term of 112 months. Sentence imposed to run concurrent with State sentence. Defendant to receive credit for time served." Id. at 124. The BOP interpreted the sentencing court's statements granting Ruggiano with "credit for time served" on his state sentence as merely a nonbinding recommendation which the BOP was at liberty to, and did, ignore. Id. Ruggiano argued in his subsequent § 2241 petition that the sentencing court actually adjusted his federal sentence length for time served on his state sentence pursuant to the Sentencing Guidelines. Id. at 126. Specifically, he argued that "he was sentenced to 112 months *minus* the time served on the state conviction (14 months), and it was from this base (98) months that the BOP should have calculated the point at which his sentence would be

11

satisfied." Id. (emphasis added). As relief, Ruggiano sought credit for the 14 months served on his state sentence before his federal sentence was imposed.

The U.S. Court of Appeals for the Third Circuit agreed with Ruggiano. In doing so, it did not hold that the sentencing court "commenced" Ruggiano's sentence on the date his state sentence commenced. Indeed, the Third Circuit Court noted that the BOP is the entity that has the "statutory duty" to "calculate[ ] the beginning and end dates of Ruggiano's sentence." Id. at 126. Rather, the Third Circuit Court held that the sentencing court actually sentenced Ruggiano to a term of imprisonment of 112 months minus the 14 months he already had served in state custody prior to the commencement of his federal sentence – resulting in a total term of imprisonment of 98 months. In making this determination, the court noted that imposing a concurrent sentence retroactively to coincide with time served on a pre-existing sentence is properly termed an "adjustment," and not a "credit" or "downward departure." Id. at 133.

Petitioner's reliance on Ruggiano is misplaced. In 2003, after the decision in Ruggiano was issued, the application notes to § 5G1.3(c) were amended specifically to avoid confusion with the BOP's exclusive authority to grant credit for time served under § 3585(b). See U.S.S.G. § 5G1.3 app. note 3(E) (2003). The application notes state that subsection (c) does not authorize an "adjustment" of the sentence for a period of imprisonment already served on the undischarged prison term but that, in an extraordinary case, a sentencing court may apply credit for time served on the undischarged sentence by way of a downward departure. The application notes further state that any downward departure pursuant to § 5G1.3(c) should be clearly stated on the Judgment in a Criminal Case Order. Because this amendment was in effect at the time Petitioner's federal sentence was imposed and Petitioner has not directed this court to any evidence that his sentencing court applied a downward departure under

12

§ 5G1.3(c) of the Sentencing Guidelines, his argument that Ruggiano supports his request for habeas relief must fail.

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that that the petition for a writ of habeas corpus be denied.[2]

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties must seek review by the district court by filing objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to do so will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).


/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: April 28, 2014

cc: The Honorable Nora Barry Fischer
United States District Judge

---

[2] Section 102 of the Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2253 (as amended)) codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Federal prisoner appeals from the denial of a § 2241 habeas corpus proceeding are not governed by the certificate of appealability requirement. United States v. Cepero, 224 F.3d 256, 264-65 (3d Cir. 2000); 28 U.S.C. § 2253(c)(1)(B). Therefore, no recommendation regarding a certificate of appealability is made.